UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

MEARS TRANSPORTATION GROUP,
INC., a Florida corporation,

    Plaintiff,

CASE NO.: 6:08-CV-01359-JA-GJK

vs.

ZURICH AMERICAN INSURANCE
COMPANY, INC., a foreign
corporation,

    Defendant.

_____/

## DEFENDANT'S ANSWER AND AFFIRMATIVE DEFENSES

Defendant, Zurich American Insurance Company ("Zurich"), by and through its undersigned counsel, responds to the Complaint of Mears Transportation Group, Inc. ("Mears") as follows:

### JURISDICTION / VENUE

1. Admitted for jurisdictional purposes only, otherwise denied.

2. Admitted for jurisdictional purposes only, otherwise denied.

### PARTIES

3. Admitted.

4. Admitted.

### GENERAL ALLEGATIONS

5. Admitted that Zurich issued Storage Tank System Third Party Liability And Cleanup Policy USC 9270761 (the "Policy") to Mears and that Zurich is in possession of a copy of the policy. Otherwise, denied.

6. Denied. The Policy language sets forth coverage and speaks for itself.

7. Denied. The Policy language sets forth coverage and speaks for itself.

8. Admitted that at some point, petroleum fuel contaminated the soil at the insured premises. Otherwise, denied.

9. Admitted.

10. Admitted.

11. Admitted that Mears was required to evacuate the building located at 324 West Gore Street, Orlando, Florida (the "Building"). Otherwise, denied.

12. Admitted that Mears evacuated personnel from the building as required. Admitted that Mears did relocate personnel, but not for the reasons set forth. Otherwise, denied.

13. Admitted that Mears incurred "cleanup costs." Denied that expenses to relocate personnel from the Building are such costs. Otherwise, denied.

14. Admitted that Mears submitted itemized claims in accordance with the Policy. Admitted that Mears submitted a non-covered claim for $153,501.78. Otherwise, denied.

15. Admitted that Zurich denied coverage and did not pay for expenses incurred to relocate Mears' personnel. Otherwise, denied.

16. Admitted that procedural conditions have been met. Otherwise denied.

## COUNT I

17. Zurich restates its responses to paragraphs 1-16 of the Complaint.

18. Denied.

19. Admitted that Mears makes such an assertion. Otherwise, denied.

20. Admitted that Zurich asserts expenses incurred for relocation of Mears'

2

personnel are not covered. Otherwise, denied.

21. Admitted.

22. Admitted that Mears and Zurich do not agree as to whether the expenses incurred for relocation of Mears' personnel are covered. Otherwise, denied.

23. Denied.

24. Without knowledge and therefore denied.

## COUNT II

25. Zurich restates its responses to paragraphs 1-16 of the Complaint.

26. Admitted that Zurich issued Storage Tank System Third Party Liability And Cleanup Policy USC 9270761 (the "Policy") to Mears, and that the Policy language sets forth coverage and speaks for itself. Otherwise, denied.

27. Admitted that Mears incurred "cleanup costs." Denied that expenses to relocate personnel from the Building are such costs. Otherwise, denied.

28. Admitted that Zurich agreed to pay for "cleanup costs" as set forth in the Policy and that the Policy speaks for itself. Otherwise, denied.

29. Denied.

30. Admitted that Zurich has not paid for the costs of the relocation of Mears' personnel. Otherwise, denied.

31. Denied.

32. Denied.

33. Without knowledge, and therefore denied.

34. Allegations not specifically admitted are hereby denied.

3

## AFFIRMATIVE DEFENSES

### FIRST AFFIRMATIVE DEFENSE

Any amounts claimed for the cost of relocation of personnel are not amounts claimed for cleanup costs or any other covered expense as set forth in the terms of the Policy, which speaks for itself. A copy of the Policy is attached hereto as Exhibit "A".

### SECOND AFFIRMATIVE DEFENSE

Any amounts claimed for the costs of relocation of personnel are amounts based upon or arising out of excluded causes of loss as set forth in the terms of the Policy attached hereto as Exhibit "A", which speaks for itself.

**WHEREFORE**, Defendant Zurich American Insurance Company respectfully requests judgment in its favor dismissing the Complaint in its entirety and awarding Zurich its costs and such further relief as the Court may deem just and proper.

BUTLER PAPPAS WEIHMULLER KATZ CRAIG LLP

/s Louis Schulman
R. STEVEN RAWLS, ESQ.
Florida Bar No.: 938254
rrawls@butlerpappas.com
LOUIS SCHULMAN, ESQ.
Florida Bar No.: 377244
lschulman@butlerpappas.com
777 S. Harbour Island Boulevard
Suite 500
Tampa, Florida 33602
Telephone: (813) 281-1900
Facsimile: (813) 281-0900
Attorneys for Defendant,
Zurich American Insurance Company

## CERTIFICATE OF SERVICE

I hereby certify that on August 20, 2008, I electronically filed the foregoing with the Clerk of the Court by using the CM/ECF system.

/s Louis Schulman
R. STEVEN RAWLS, ESQ.
Florida Bar No.: 938254
rrawls@butlerpappas.com
LOUIS SCHULMAN, ESQ.
Florida Bar No.: 377244
lschulman@butlerpappas.com
777 S. Harbour Island Boulevard
Suite 500
Tampa, Florida 33602
Telephone: (813) 281-1900
Facsimile: (813) 281-0900
Attorneys for Defendant,
Zurich American Insurance Company

# Storage Tank System Third Party Liability And Cleanup Policy



ZURICH

Declarations

Claims Made Coverage

ZURICH AMERICAN INSURANCE COMPANY

1400 American Lane
Schaumburg Illinois 60196-1056

Policy Number USC 9270761                 Renewal of Number USC 3631012 2

Item 1 Named Insured and Mailing Address   Producer           Sub-Producer
MEARS TRANSPORTATION GROUP                 BRAISHFIELD ASSOCIATES, INC
                                           5950 HAZELTINE NATIONAL DRIVE
324 W GORE                                 STE 650
ST
ORLANDO           FL    32806              ORLANDO           FL    32822

Item 2 Policy Period   From 08/15/01 To 08/15/02
12 01 am Standard Time at the address of the NAMED INSURED

Item 3 LIMITS OF LIABILITY    $ 1 000 000       Each Claim
                              $ 1,000,000       Total for all Claims

Item 4 DEDUCTIBLE             $ 5 000           Each Claim

Item 5 SCHEDULED STORAGE TANK SYSTEMS

Item 6 FORMS AND ENDORSEMENTS   See Schedule
       See Attached Schedule

Item 7 POLICY PREMIUM         $ 1 962 00

Item 8 RETROACTIVE DATE   COVERAGE A 08/15/94        COVERAGE B 08/15/94

Item 9 EXTENDED REPORTING PERIOD  150% of Expiring Premium

Please note that if a Financial Compliance Certificate of Insurance has been issued with this policy the Each Claim and Total for all Claims Limits of Liability referred to in Item 3, above shall also be known as the Each Occurrence and Annual Aggregate Limits of Liability

Signed by _____        _____
         Authorized Representative                Date

Copyright © 1999 by Zurich American Insurance Company                    U FNVL D 147 A CW (1/99)
                                                                                      Page 1 of 1
All rights reserved No part of this document covered by the copyrights hereon may be reproduced or copied in any form by any means graphic electronic or mechanical including photocopying taping or information storage and retrieval systems without written permission of the Zurich American Insurance Company



EXHIBIT A

# Storage Tank System Third Party Liability And Cleanup Policy


**ZURICH**

Claims Made And Reported Coverage

This is a claims made and reported policy Notice of a potential "claim" is not a "claim" and does not trigger coverage under this policy This policy has certain provisions and requirements unique to it and may be different from other policies you may have purchased Read the entire policy carefully to determine rights, duties and what is and is not covered Throughout this policy the words "you" and "your" refer to the Named Insured shown in the Declarations, and any other person or organization qualifying as a Named Insured under this policy The words "we", "us" and "our" refer to the Company providing this insurance Words and phrases that appear in quotation marks have special meaning Refer to DEFINITIONS (Section II)

"Claim(s)" must first be made by or against the "insured" during the "policy period" and ' claim(s)" must be reported to us during the "policy period", the automatic extended reporting period or the extended reporting period, if applicable

The payment of "cleanup costs" and "loss(es)" reduces the Limits of Liability of this insurance However, if the applicable Limit of Liability is exhausted by payment of "cleanup costs" or "loss(es)", we shall not be liable for "claim expense(s)" or for the amount of any judgment or settlement

This policy is location - specific and storage tank system - specific only "scheduled storage tank system(s)" at 'scheduled location(s)" are covered Prior notice of "voluntary scheduled storage tank system removal or replacement" is required under this policy

In consideration of the payment of premium and your undertaking to pay the Deductible as described herein, in reliance upon the statements in the Application made a part hereof, and subject to the Limits of Liability of this insurance as set forth in the Declarations, and the exclusions, conditions and other terms of this policy, we agree with you as follows

## I INSURING AGREEMENT

### COVERAGE A FIRST PARTY CLEANUP DISCOVERY

We will pay on behalf of the "insured" any ' cleanup costs" required by "governmental authority" as a result of a "release(s)" that "emanates from" a ' scheduled storage tank system(s)" at a "scheduled location", that commences on or after the "retroactive date" and is first discovered by the "insured" during the "policy period", provided the "claim" is reported to us during the "policy period", or any applicable extended reporting period Coverage for "claim(s)" due to changes in "governmental authority" during any applicable extended reporting period is set out in EXTENDED REPORTING PERIODS (Section V)

### COVERAGE B THIRD PARTY LIABILITY

We will pay on behalf of the "insured" any 'loss" caused by a "release(s) that "emanates from" a "scheduled storage tank system(s)" at a "scheduled location", that commences on or after the "retroactive date" and that the "insured" is legally obligated to pay as a result of "claim(s) first made against the "insured" during the "policy period" provided that the "claim" is reported to us during the "policy period", or any applicable extended reporting period as set out in EXTENDED REPORTING PERIODS (Section V)

### DEFENSE COVERAGE B

We shall have the right and duty to assume the adjustment, defense and settlement of any "claim" brought by or on behalf of any federal, state or local regulatory agency, or by or on behalf of a third party seeking payment for "loss(es)" to which this insurance applies Our duty to adjust, defend and settle all "claim(s)" to which this insurance applies, pending and future, ends when the applicable Limit of Liability has been tendered into court or exhausted by payment of "loss(es)"

## II DEFINITIONS

A "Abandonment" or "abandoned" means the discontinuance of operation of a "scheduled storage tank system" without performing and completing any required closure of the "scheduled storage tank system" pursuant to state. local or municipal law, regulation, order or agency direction

B "Automobile" means a land motor vehicle, trailer or semi-trailer designed for travel on public roads. including any machinery or apparatus attached thereto

Copyright © 1999 by Zurich American Insurance Company

U ENVL 147 C CW (8/99)
Page 1 of 9

All rights reserved No part of this document covered by the copyrights hereon may be reproduced or copied in any form by any means graphic electronic or mechanical including photocopying taping or information storage and retrieval systems without written permission of the Zurich American Insurance Company




C  "Bodily injury" means physical injury, sickness or disease, sustained by any person, including the death resulting therefrom and including mental anguish or emotional distress when accompanied by physical injury

D  "Claim(s)" means

1. under Coverage A, notice by the "insured" during the "policy period" of a "release" from a "scheduled storage tank system" at a "scheduled location" which seeks the payment of "cleanup costs" required by "governmental authority", or

2. under Coverage B, any demand received by the "insured" during the "policy period" alleging liability or responsibility on the part of the "insured" for "loss(es)" resulting from a "release" from a "scheduled storage tank system" at a "scheduled location"

E  "Claim expense(s)" means

1. fees charged by an attorney designated by

   a. us, or

   b. the "insured" with our prior written consent, and

2. all other fees, costs and expenses resulting from the defense, settlement and appeal of a "claim", if incurred by us or the "insured" with our consent, including interest on the full amount of any judgment that accrues after entry of the judgment and before we have paid, offered to pay, or deposited in court the amount available for the judgment under the policy

However, "claim expense(s)" does not include the salaries or expenses of the "insured's" or our regular employees or officials or expenses of our adjusters

F  "Cleanup costs" means

1. the necessary expenses incurred in the investigation, removal, remediation, neutralization or immobilization of contaminated soil, surface water, groundwater, or other contamination, and

2. for a "claim" under Coverage A, the legal fees and costs to represent the "insured" before any federal, state or local regulatory agency provided such fees and costs are reasonable and necessary and incurred with our written consent,

however, any costs, charges or expenses incurred by the "insured" to confirm the existence of a "release" under Coverage A shall not be considered "cleanup costs"

G  "Emanates from" means coming from and originating from a "scheduled storage tank system" that is on, at or under a "scheduled location(s)"

H  "Governmental authority" means applicable federal, state, or local statutes and regulations, orders or ordinances, including remedial action plans which (i) meet the requirements of a "voluntary cleanup program", (ii) are validly executed with all necessary regulatory entities and (iii) are negotiated with requirements no stricter than those necessary for the current use set forth in your Application

I  "Insured" means

1. you or your,

2. any current or former principal, partner, executive, officer, director, employee, contract employee or leased personnel of the "insured" while acting within the scope of their employment or written agreement with the "insured",

3. the heirs, executors, administrators, assigns and legal representatives of each of the "insured(s)" in the event of death, incapacity, or bankruptcy, or

4. any other person or entity endorsed onto this policy as an "insured"

J  "Loss(es)" means compensatory damages or legal obligations arising from

1. "bodily injury", or

2. "property damage"

K  "Mediation" means any non-binding intervention by a neutral third party

L  "Natural resource damage(s)" means the sum of

1. reasonable direct costs, including costs of assessment, associated with action necessary to restore (including replacement) the natural resources to its baseline condition prior to the "release", and

2. the "use value" of injury to or destruction of natural resources, including the land, surface water, groundwater, subsurface strata, air, fish, wildlife, or biota between the time of a "release" and restoration of the natural resources injured by the "release"

"Use value" means the value of the natural resources to the public attributable to the direct use of the services provided by the natural resources

M "Policy period" means the period set forth in the Declarations, or any shorter period arising

1. from cancellation or termination of this policy by us or you, or

2. with respect to specific "scheduled storage tank system(s)" designated in the Declarations

   a. the deletion of such "scheduled storage tank system(s)" from this policy by us upon your request, or

   b. the sale, leasing to others, giving away, "abandonment", or relinquishing of operational control, of such "scheduled storage tank system(s)" by you

N "Property damage" means

1. physical injury to or destruction of tangible property, including the resulting loss of use thereof,

2. loss of use of tangible property that is not physically injured or destroyed,

3. "cleanup costs", and

4. "natural resource damage(s)"

O "Release(s)" mean the discharge, dispersal, release or escape of any solid, liquid gaseous or thermal irritant, contaminant or pollutant, including smoke vapor, soot, fumes, acids alkalis, chemicals and waste from a "scheduled storage tank system" into groundwater, surface water, or surface or subsurface soils

P "Retroactive date" means the date set forth in the Declarations and is the earliest date that a "release" can commence for coverage to be provided under this policy

Q "Scheduled location(s)" means the property(ies) designated in the Declarations or by endorsement onto this policy

R "Scheduled storage tank system(s)" means a tank(s) owned or operated by you including any connected piping, ancillary equipment and containment system that is on, within, or under a "scheduled location", identified in the Declarations or applicable Endorsement and described in the Application

S "Storage tank system(s)" means a tank(s) including any connected piping, ancillary equipment and containment system

T "Voluntary cleanup program" means a program of a state of the United States which provides (i) mechanisms for the written approval of voluntary remedial action plans protective of human health or the environment and (ii) a certification or similar documentation indicating that such actions are complete

U "Voluntary scheduled storage tank system removal or replacement" means the removal or replacement of the tank or the connected piping of a "scheduled storage tank system" from the "scheduled location"

## III TERRITORY

The insurance afforded by this policy applies in the United States of America (including its territories and possessions), Puerto Rico or Canada provided that the "claim" is made or brought within the United States of America (including its territories and possessions), Puerto Rico or Canada

## IV EXCLUSIONS

This insurance does not apply to "claim(s)", "cleanup costs" or "loss(es)" based upon or arising out of

A any "release" known to an "insured" prior to the effective date of the "policy period",

B any dishonest, fraudulent, intentional or malicious act or those of a knowingly wrongful nature, or the intentional, willful or deliberate non-compliance with any statute, regulation, ordinance, administrative complaint, notice of violation, notice letter, executive order, or instruction of any governmental agency or body by or at the direction of an "insured", except that this exclusion will not apply to an "insured" who did not commit, participate in, or have knowledge of any of the acts described.

C any "claim" made

    1 by an "insured" against any other "insured", or

    2 against an "insured" by any entity or individual

        a that controls, owns, operates or manages an "insured", or

        b which an "insured" controls, owns, operates or manages,

D any obligation of an "insured" which could have been brought in whole or in part under a workers compensation, disability benefits, unemployment compensation or any similar law.

E any "release" from a "scheduled storage tank system" which commences after the "scheduled storage tank system" or the "scheduled location" is sold, leased, given away, "abandoned", or operational control has been relinquished by the "insured",

F the liability of others assumed by the "insured" under any contract or agreement, however this exclusion does not apply to liability for "loss(es)" or "cleanup costs" that the "insured" would have by operation of law in the absence of the contract or agreement.

G fines, penalties, and treble damages,

H injury to any employee, contract employee or leased personnel of the "insured" if such injury occurs during and in the course of said employment, or to the spouse, child, brother or sister of any employee, contract employee or leased personnel as a consequence of said employment, or to any obligation of the "insured" for indemnity or contribution to another because of "loss" arising out of such injury in the course of employment,

I any consequence, whether direct or indirect, of war, invasion, act of foreign enemy, hostilities (whether war be declared or not), civil war, rebellion, revolution, insurrection or military or usurped power, strike, riot or civil commotion.

J the ownership, entrustment, maintenance, use, operation, loading or unloading of any aircraft, vessel, rolling stock or "automobile" or any other land motor vehicle, trailer or semi-trailer designed for travel on public roads including any machinery or apparatus attached thereto This exclusion does not apply to loading and unloading necessary to operate the "scheduled storage tank system",

K any costs, charges or expenses incurred by the "insured" for goods supplied by an "insured" or services performed by the "insured's" staff or salaried employees, or the "insured's" parent, subsidiary or affiliate, unless such costs, charges or expenses are incurred with our prior written consent.

L any costs for the reconstruction, repair, removal, maintenance, replacement, upgrading, or rebuilding of any "scheduled storage tank system", personal property, fixtures, buildings, or any other improvements and any site enhancement or routine maintenance on, within, or under the "schedule location(s)",

M any costs arising out of the removing, replacing or recycling of the contents of any "scheduled storage tank system".

N any intermittent or continuous "release" which first commences prior to the "retroactive date"

## V EXTENDED REPORTING PERIOD

A You shall be entitled to an automatic extended reporting period without additional charge upon termination of coverage as defined in this section The automatic extended reporting period starts at the end of the "policy period" and lasts for six (6) months, except if the new or renewed policy following this policy has the same "retroactive date" or a "retroactive date" earlier than that of this policy then an automatic extended reporting period of thirty (30) days shall apply

B In addition to the automatic extended reporting period, you shall be entitled to purchase an extended reporting period for three years in duration, except in the event of nonpayment of premium The charge for an extended reporting period for three years in duration shall not be more than one hundred and fifty percent (150%) of the premium per "policy period" The extended reporting period starts when the automatic extended reporting period, set forth in the above paragraph, ends

C Upon payment of the additional premium we shall issue an endorsement providing for an extended reporting period for three years, provided that you

    1 make a written request for such endorsement which we receive within thirty (30) days after termination of coverage as defined herein, and

    2 pay the additional premium when due If such additional premium is paid when due, the extended reporting period may not be canceled by us provided that all other terms and conditions of the policy are met

D  The "claim" first reported to us within the automatic extended reporting period and the extended reporting period, if purchased in accordance with this section, shall be deemed to have been made on the last day of the "policy period", and coverage shall apply under this policy provided that

1. under Coverage A, the "release" first commenced on or after the "retroactive date" and before the end of the "policy period" and you first discovered the "release" and provided notice to us during the "policy period" pursuant to Section VII B and the "claim" arises due to changes in "governmental authority", or

2. under Coverage B, the "release" first commenced on or after the "retroactive date" and before the end of the "policy period",

and the "claim" is otherwise covered under the terms and conditions of this policy

E  For the purpose of this automatic extended reporting period and extended reporting period, if purchased, termination of coverage means

1. an event of cancellation, nonrenewal, or termination of this policy, except for non payment of premium, fraud, or material change in the use of the "scheduled storage tank system", and

2. with respect to specific "scheduled storage tank system(s)"

   a. the deletion of such "scheduled storage tank system" from this policy by us upon your request, or

   b. the sale, leasing to others, giving away, or relinquishing of operational control of such "scheduled storage tank system(s)" by you

F  If the automatic extended reporting period or an extended reporting period endorsement is in effect, we will provide the Each Claim Limit of Liability subject to that which is remaining in the Total for all Claims Limit of Liability shown in the Declarations to this policy, but only for "claim(s)" first reported to us pursuant to the policy during the automatic extended reporting period or extended reporting period endorsement  The purchase of an extended reporting period does not reinstate or increase the Limit of Liability shown in the Declarations as applicable to the Total for all Claim(s)

G  Notwithstanding paragraph J, Other Insurance, CONDITIONS (Section VIII), the insurance afforded for "claim(s)" first reported during the automatic extended reporting period and the extended reporting period endorsement is excess over any other valid and collectible insurance available under policies in force during the automatic extended reporting period and extended reporting period endorsement

## VI  LIMITS OF LIABILITY AND DEDUCTIBLE

### A  EACH CLAIM LIMIT OF LIABILITY

Our liability for each "claim", including "cleanup costs" and "loss(es)" shall not exceed the amount set out in the Declarations as the Each Claim Limit of Liability  We shall not be obligated to pay any "cleanup costs", "loss(es)" or "claim expense(s)", or continue the defense of the "claim" after the Each Claim Limit of Liability has been tendered into court or exhausted by payment for "cleanup costs" or "loss(es)"

### B  TOTAL LIMIT OF LIABILITY

Subject to paragraph A above, our total liability for all "cleanup costs" and "loss(es)" shall not exceed the amount set out in the Declarations as the Total for all Claims Limit of Liability  We shall not be obligated to pay any "cleanup costs" "loss(es)" or "claim expense(s)" or undertake or continue the defense of any "claim", pending or future, after the Total for all Claims Limit of Liability has been tendered into court or exhausted by payments for "cleanup costs" or "loss(es)"

### C  DEDUCTIBLE

The Deductible amount set out in the Declarations is your obligation and applies to each "claim" and shall include all "cleanup costs" and "loss(es)" within the Deductible  We may advance payment for "cleanup costs" or "loss(es)" within the Deductible  You shall promptly reimburse us for advancing any element of "cleanup costs" or "loss(es)" paid by us within your Deductible

If we and you agree to use "mediation" to resolve a "claim" for which a defense has been provided and a "claim" is resolved thereby, the Deductible set out in the Declarations shall be reduced by 50% for the "claim" only, subject to a maximum reduction of $25,000

D MULTIPLE INSUREDS, CLAIM(S), RELEASE(S), LOSS(ES), CLEANUP COSTS, CLAIMANTS, AND POLICY PERIODS

1 MULTIPLE INSUREDS OR CLAIMANTS

The inclusion of more than one "insured" in the making of a single "claim" or the bringing of a single suit regarding the same "release" shall not increase the Limits of Liability stated in the Declarations, and the making of "claim(s)" or the bringing of suits by more than one person or organization shall not increase the Limits of Liability stated in the Declarations

2 MULTIPLE CLAIMS

Two or more "claim(s)" arising out of the same, interrelated, associated, repeated or continuous "release(s)" or a series of related "release(s)" shall be considered a single "claim", and shall be subject to one Limit of Liability and only one Deductible as set out in the Declarations, regardless of the number of "insured(s)" or claimants involved or the number or amount of "loss" or "policy period(s)" for which "release(s)", "cleanup costs" or "loss(es)", occurred and regardless of the number of "release(s)" alleged to have occurred

3 MULTIPLE POLICY PERIODS

Any "claim" which takes place over two or more "policy period(s)" shall be subject to one Limit of Liability and one Deductible as stated in the Declarations. All such "claim(s)", whenever made, shall be considered first made on the date on which the earliest "claim" was first made and reported to us and the Limits of Liability applicable to that "policy period" shall apply

4 CLAIMS ARISING FROM REPORTED POTENTIAL CLAIMS

Any potential "claim" which results in a "claim" in a subsequent uninterrupted renewal "policy period" shall be subject to the Each Claim and Total for All Claims Limits of Liability applicable to the "policy period" in effect when the potential "claim" was reported to us

5 CLAIMS REPORTED IN THE EXTENDED REPORTING PERIODS

The automatic extended reporting period and the extended reporting period, if purchased by you, shall not serve to increase or reinstate the Limits of Liability set out in the Declarations to the policy. The Limits of Liability shall be that which remains at the end of the "policy period"

E EXHAUSTION OF LIMITS AND TRANSFER OF DUTIES

When the Each Claim or Total for all Claims Limits of Liability described above have actually been exhausted in the payment of "loss(es)", we will

1 notify the "insured", in writing, as soon as possible that such limits have been exhausted and our duty to defend "claim(s)" under INSURING AGREEMENTS (Section I) has also ended, and

2 commence and cooperate in the transfer of control to any appropriate "insured" of all "claim(s)" which are subject to that limit and which are reported to us before that limit is exhausted

VII CLAIM PROVISIONS

A NOTICE OF CLAIM

In the event of a "claim", the "insured" must give written or oral notice to us as soon as possible containing particulars sufficient to identify an "insured" and reasonably obtainable information with respect to

1 the time, place, "scheduled location", "scheduled storage tank system" description, and circumstances of the "claim" including how and when the "insured" first became aware of the "claim",

2 the names and addresses of any injured parties and available witnesses,

3 any and all investigative or engineering reports, data or information including "release" detection tests or procedures, such as system tightness tests or site checks, undertaken to investigate a suspected "release" has taken place, and

4 any and all other relevant information about the "claim", "release", "cleanup costs" or "loss"

If a "claim" is made against an "insured", the "insured" shall immediately forward to us every demand, notice, summons, complaint order or other process received by an "insured" or its representatives

## B NOTICE OF POTENTIAL CLAIM

If during the "policy period" the "insured" discovers a "release" which may reasonably be expected to give rise to a "claim" under the policy, the "insured" shall provide notice to us as soon as possible during the "policy period" containing particulars sufficient to identify an "insured" and reasonably obtainable information with respect to

1. the time, place, "scheduled location", "scheduled storage tank system" description, and circumstances of the "release", including how and when the "insured" first became aware of or made the discovery of the "release",

2. the names and addresses of any injured parties and available witnesses,

3. all investigative or engineering reports, data or information including "release" detection tests or procedures, such as system tightness tests or site checks undertaken to investigate whether a suspected "release" has taken place,

4. all other relevant information about the "claim", "release", "cleanup costs" or "loss",

and any subsequent "claim" arising from the reported "release" made by or against the "insured" and reported to us, pursuant to paragraph C, below, during an effective renewal "policy period" or extended reporting period issued by us for which coverage is provided by this policy shall be deemed for the purposes of this insurance to have been made on the date on which written notice of the "release" was received by us

## C NOTICE TO US

All "claim(s)" and potential "claim(s)" shall be reported

in writing to

Zurich American Insurance Company
Environmental Claims Unit
1400 American Lane
Schaumburg, Illinois 60196
Attn Managing Account Specialist -
Environmental Specialties

or

by telephone to

The Claim Reporting Center
1 800 987 3373

or any other address as we may substitute by endorsement onto the policy

## D SELECTION OF DEFENSE COUNSEL

1. In the event an "insured" is entitled by law to select independent counsel to defend an "insured" at our expense, the "claim expense(s)" including all attorneys fees we must pay to that counsel, are limited to rates we actually pay to counsel we retain in the ordinary course of business in the defense of similar claims in the community where the "claim" arose or is being defended

   Additionally, we may exercise the right to require that such counsel have certain minimum qualifications with respect to their legal competency, including experience in defending claims similar to the one pending against the "insured" and to require such counsel to have errors and omissions insurance coverage The "insured" agrees that such counsel will timely respond to our request for information regarding the "claim" Furthermore, an "insured" may at anytime, by its signed consent, waive its right to select independent counsel

2. The "insured" shall have the option to consent to our choice of legal counsel, which consent shall not be unreasonably withheld or denied

## E SETTLEMENT

The "insured" shall not admit liability or settle any "claim" without our written consent If we recommend a reasonable settlement of a "claim" and the "insured" has had the opportunity to concur, such concurrence is not to be unreasonably withheld If we recommend a reasonable settlement of a "claim"

1. for an amount within the Deductible and the "insured" refuses to concur with such settlement, then we shall not be liable for any "cleanup costs" "loss(es)" or "claim expense(s)" in excess of the Deductible, or

2. for a total amount in excess of the balance of the Deductible and an "insured" refuses to concur with such reasonable settlement, then our liability for "cleanup costs", "loss(es)" or "claim expense(s)" shall be limited to that portion of the recommended settlement and the costs, charges and expenses incurred as of the date of an "insured's" refusal, which exceed the Deductible and fall within the Limits of Liability

### F VOLUNTARY PAYMENTS

No costs, charges or related "claim expense(s)" shall be incurred, or liability assumed by the "insured" without our written consent, which shall not be unreasonably withheld or denied

## VIII CONDITIONS

### A ASSIGNMENT
Assignment of interest under this policy shall not bind us until our consent is endorsed thereon, which consent shall not be unreasonably withheld

### B AUDIT AND INSPECTION
We shall be permitted, upon reasonable prior notice, to inspect, sample and monitor on a continuing basis your premises, "scheduled location(s)", operations or "scheduled storage tank system(s)" Neither our right to make inspections, sample and monitor nor the actual undertaking thereof nor any report thereon, shall constitute an undertaking on our behalf or others to determine or warrant that a premises, "scheduled location", operation or "scheduled storage tank system" is safe, healthful or conforms to acceptable engineering practice or is in compliance with any laws rules or regulations We do not manage or exercise control over any "scheduled storage tank system"

### C BANKRUPTCY
Bankruptcy or insolvency of an "insured" will not relieve us of our obligations under this policy

### D CANCELLATION
This policy may be canceled by you, by surrender thereof to us or any of our authorized agents, or by mailing to us written notice stating when the cancellation shall be effective This policy may be canceled by us by mailing to you, at the address shown in this policy, a notice stating when thereafter (not less than 60 days, or 10 days for non-payment of premium) such cancellation shall be effective The mailing of notice as aforesaid shall be sufficient proof of notice The time of surrender or the effective date and hour of cancellation stated in the notice shall become the end of the "policy period" Delivery of such written notice either by you or by us shall be equivalent to mailing

If you cancel, earned premium shall be 92 5% of the pro-rata premium If we cancel, earned premium shall be computed pro-rata Premium adjustment may be either at the time cancellation is effected or as soon as possible after cancellation becomes effective, but payment or tender of unearned premium is not a condition of cancellation

### E CHANGES
Notice to any agent or knowledge possessed by any agent or by any other person shall not effect a waiver or change in any part of this policy or stop us from asserting any right under the terms of this policy The terms of this policy shall not be waived or changed except by endorsement issued to form a part of this policy

### F CHOICE OF LAW
In the event an "insured" and we dispute the meaning, interpretation or operation of any term, condition, definition or provision of this policy, resulting in litigation, arbitration or other form of dispute resolution, the "insured" and we agree that the law of the State of New York shall apply without giving effect to any conflicts or choice of law principles In the event the "insured" and we agree to resolve the dispute by arbitration any such arbitration shall be in accordance with the Commercial Arbitration Rules of the American Arbitration Association

### G COOPERATION
The "insured" and we agree to assist and cooperate in the fulfillment of the policy's terms, including the investigation, adjustment, defense or settlement of "claim(s)"

### H DECLARATIONS
By acceptance of this policy, you agree that the statements in the Declarations and Application are your agreements and representations, that this policy is issued in reliance upon the truth of such representations and that this policy embodies all agreements existing between you and us or any of your or our agents relating to this insurance

### I NOTICE OF VOLUNTARY SCHEDULED STORAGE TANK SYSTEM REMOVAL OR REPLACEMENT
You shall provide notice to us of your intention to perform a voluntary "scheduled storage tank system" removal or replacement at least forty eight (48) hours prior to the voluntary "scheduled storage tank system" removal or replacement Notice shall be provided consistent with CLAIM PROVISIONS (Section VI), Notice of Potential Claim

### J OTHER INSURANCE
The insurance provided under this policy is primary insurance, except when stated in the Declarations to apply in excess of or contingent upon the absence of other insurance When this insurance is primary and the "insured" has other insurance which is stated to be applicable to the "claim", "cleanup costs" or "loss" on an excess basis, the amount of our liability under this policy shall not be reduced by the existence of such excess insurance

When both this insurance and other insurance apply to the "claim", "cleanup costs" or "loss" on the same basis, whether primary, excess or contingent, we shall not be liable under this policy for a greater proportion of the "claim", "cleanup costs", or "loss" than that set out in the Declarations or the following contribution provision, whichever method is lower

1   Contribution by Equal Shares - Under this approach each insurer contributes equal amounts until it has paid its applicable limit of insurance or until none of the "claim", "cleanup costs", or "loss" remains, whichever occurs first, or

2   Contribution by Limits - Each insurer's share is based on the ratio of its applicable limit of insurance to the total applicable limits of insurance of all insurers

K   SOLE AGENT - You shall act on behalf of all "insured(s)" for all purposes, including but not limited to the payment or return of premium, receipt and acceptance of any endorsement issued to form a part of this policy, giving and receiving notice of cancellation or non-renewal, and the exercise of the rights provided in the Extended Reporting Period section

L   SEPARATION OF INSUREDS - Except with respect to the Limit of Liability, and any rights or duties specifically assigned to you, this insurance applies

1   as if each Named Insured were the only Named Insured, and

2   separately to each "insured" against whom "claim" is made

Misrepresentation, concealment, breach of condition or violation of any duty under this policy by one "insured" shall not prejudice the interest of coverage of another "insured" under this policy

M   SUBROGATION - In the event of any payment under this policy, we shall be subrogated to all an "insured's" rights of recovery thereof against any person or organization   An "insured" shall execute and deliver instruments and papers and do whatever else is necessary to secure such rights   The "insured" shall do nothing to prejudice such rights

Any recovery obtained through subrogation, after expenses incurred in such subrogation are deducted by the party bearing the expense, shall be applied proportionately to you and us for actual payments as a result of judgment, settlement or defense of a "claim"

# Florida Changes



| Policy No | Eff Date of Pol | Exp Date of Pol | Eff Date of End | Producer | Add'l Prem | Return Prem |
|---|---|---|---|---|---|---|
| USC 9270761 | 08/15/01 | 08/15/02 | 08/15/01 | 09003 | $ | $ |

### THIS ENDORSEMENT CHANGES THE POLICY  PLEASE READ IT CAREFULLY

This endorsement modifies insurance provided under the

Storage Tank System Third Party Liability and Cleanup Policy

I   SECTION VIII CONDITIONS  paragraph D  CANCELLATION is deleted in its entirety and replaced by the following

   D  CANCELLATION AND NONRENEWAL

   1   CANCELLATION

   a   You may cancel this policy by mailing or delivering to us advance written notice of cancellation

   b   If this policy has been in effect for 90 days or less, we may cancel this policy by sending by certified mail or delivering to you a written notice accompanied by the reason(s) for cancellation at your last mailing address known to us

   Cancellation will be effective

   (1) 10 days after you receive notice of cancellation if we cancel for nonpayment of premium or a material misrepresentation by you  or

   (2) 60 days after you receive notice of cancellation if we cancel for any other reason

   unless we specify a later date in our notice as the effective date of cancellation

   c   If this policy has been in effect for more than 90 days  we may cancel this policy

   (1) Only for one or more of the following reasons

   (a) Nonpayment of premium,

   (b) The policy was obtained by material misstatement

   (c) Failure to comply with underwriting requirements established by us within 90 days of the effective date of coverage

   (d) A substantial change in the risk covered by the policy  or

   (e) The cancellation is for all insureds under such policies for a given class of insureds  and

   (2) By sending by certified mail, or delivering to you a written notice  accompanied by the reason(s) for cancellation at your last mailing address known to us

   Cancellation will be effective

   (a) 10 days after you receive notice of cancellation if we cancel for nonpayment of premium

   (b) 45 days after you receive notice of cancellation if we cancel for a material misstatement by you  or

   (c) 60 days after you receive notice of cancellation if we cancel for any of the other permissible reasons stated in Paragraph 1 c (1)

unless we specify a later date in our notice as the effective date of cancellation

d. If you cancel, earned premium shall be 92.5% of the pro-rata premium. If we cancel, earned premium shall be computed pro-rata. Premium adjustment may be either at the time cancellation is effected or as soon as possible after cancellation becomes effective, but payment or tender of unearned premium is not a condition of cancellation.

2. NONRENEWAL.

If we decide not to renew this policy, we will send written notice of nonrenewal to you accompanied by the reason(s) for nonrenewal at least 60 days before the end of the "policy period". We will send our nonrenewal notice by certified mail, or deliver it to you at your last mailing address known to us.

Endorsement #

# Scheduled Storage Tank System(s) Retroactive Date(s)  ZURICH

| Policy No | Eff Date of Pol | Exp Date of Pol | Eff Date of End | Producer | Add'l Prem | Return Prem |
|---|---|---|---|---|---|---|
| USC 9270761 | 08/15/01 | 08/15/02 | 08/15/01 | 09003 | | |

**Named Insured and Mailing Address**  
MEARS TRANSPORTATION GROUP

324 W GORE
ST
ORLANDO
FL 32806

**Producer**

**Sub-Producer**  
BRAISHFIELD ASSOCIATES INC
5950 HAZELTINE NATIONAL DRIVE
STE 650
ORLANDO
FL 32822

**THIS ENDORSEMENT CHANGES THE POLICY PLEASE READ IT CAREFULLY**

This endorsement modifies insurance provided by the following

**Storage Tank System Third Party Liability And Cleanup Policy**

In consideration of the payment of premium and the Deductible by you and in reliance upon the statements in the Application made a part hereof we agree with you subject to all the terms exclusions and conditions of the policy that the Declarations shall be amended to include the following scheduled storage tank system(s)

**SEE ATTACHED SCHEDULE**

The retroactive date shall be the earliest date that a release can occur for coverage to be provided under the policy If no entry appears in the "retroactive date" then the retroactive date shown in the Declarations shall apply or if N/A appears in the "retroactive date" then a "retroactive date" shall not apply to the policy or that specific scheduled storage tank system(s)

All other terms and conditions of the policy shall apply and remain unchanged

Signed by _____        _____
           Authorized Representative                           Date

Copyright © 1999 by Zurich American Insurance Company

U ENVL 158 A CW (1/99)
Page 1 of 1

All rights reserved No part of this document covered by the copyrights hereon may be reproduced or copied in any form by any means graphic electronic or mechanical including photocopying taping or information storage and retrieval systems without written permission of the Zurich American Insurance Company

Storage Tank Systems
Quote # 080166177
Policy# USC 3631012-2     Named Insured  MEARS TRANSPORTATION GROUP

| ID# | NAME | ADDRESS | CITY | ST ZIP |
|---|---|---|---|---|
| FL498732355 | MEARS TRANSPORTATION GROUP | 324 W GORE ST | MIAMI | FL 33142 |

| TANK# | TP | INSTALL | RETRO | LIMITS | DED | CONTENTS | CAPACITY | CONSTRUCTION |
|---|---|---|---|---|---|---|---|---|
| 00 | UST | 06/01/85 | 08/15/94 | 1,000,000/1,000,000 | 5,000 | UNLEADED GASOLI | 12,000 | FIBERGLASS CLAD |
| 01 | UST | 06/01/85 | 08/15/94 | 1,000,000/1,000,000 | 5,000 | UNLEADED GASOLI | 12,000 | FIBERGLASS CLAD |
| 02 | UST | 10/01/98 | 08/15/99 | 1,000,000/1,000,000 | 5,000 | NEW LUBRICATION | 1,000 | FIBERGLASS CLAD |
| 03 | UST | 09/01/96 | 08/15/94 | 1,000,000/1,000,000 | 5,000 | NEW LUBRICATION | 3,000 | STEEL - BARE D/ |

1

# Important Notice



## Service of Suit

In the event of our failure to pay any amount to be due under this policy, at your request we will submit to the jurisdiction of a court of competent jurisdiction within the United States. Nothing in this condition constitutes or should be understood to constitute a waiver of our right to commence an action in any court of competent jurisdiction in the United States to remove an action to a United States District Court or to seek a transfer of a case to another court as permitted by the laws of the United States or any state in the United States. It is agreed that service of process in such suit may be made upon our General Counsel, Law Department, Zurich American Insurance Company, 1400 American Lane, Schaumburg, Illinois 60196-1056 or his or her representative, and we will abide by the final decision of such court or of any appellate court in the event of an appeal of any suit initiated against us under this policy.

If any statute of any state, territory or district of the United States requires service of process be made upon an officer of the state, we designate the Superintendent, Commissioner or Director of Insurance or other officer specified for this purpose in the statute, as our true and lawful attorney whom may be served any lawful process instituted by you or on your behalf, or any beneficiary arising out of this policy. We designate our General Counsel as the person to whom the officer is authorized to mail such process.

## In Witness Clause

In return for the payment of premium, and subject to the terms of this policy, we agree to provide insurance as stated in this policy. This policy shall not be valid unless countersigned by our duly authorized representative.

In Witness Whereof, we have executed this policy, and, where required, have had it countersigned by our duly authorized representative.

_[signature]_  
President  
Zurich American Insurance Company

_[signature]_  
Corporate Secretary  
Zurich American Insurance Company