UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

**MEARS TRANSPORTATION GROUP,**
**INC.**, a Florida corporation,

        Plaintiff,

vs.                                           CASE NO.: 6:08-cv-1359-Orl-22-GJK

**ZURICH AMERICAN INSURANCE**
**COMPANY, INC.**, a foreign
corporation,

        Defendant.
_____/

## PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

Pursuant to Rule 56(c) of the Federal Rules of Civil Procedure, the Plaintiff, MEARS TRANSPORTATION GROUP, INC. ("Mears"), files this Memorandum of Law in Opposition to Defendant's Motion for Summary Judgment. This Court should deny the Defendant's Motion for Summary Judgment and render summary judgment in favor of Mears for the reasons set forth below.

### Introduction

Zurich's Motion for Summary Judgment rests on antiquated and inapplicable case law and strained reasoning to deny Mears full coverage for the cleanup costs Mears necessarily incurred following a petroleum spill on its property. Zurich does not point to any case which denies coverage under facts analogous to this matter and cannot overcome the presumptions under New York law which require courts to construe insurance contract provisions liberally in favor of the insured and to construe exclusions strictly against the insurer. Zurich could have more specifically defined the term "cleanup costs" in its Policy with Mears or, alternatively,

specifically excluded relocations expenses incurred during the cleanup process but did not. Accordingly, as more fully explained below, this Court should render summary judgment for Mears and against Zurich.

**Argument**

I. **The Cases Cited By Zurich In Its Motion For Summary Judgment Are Inapposite And Do Not Establish Zurich's Entitlement To Summary Judgment.**

Zurich admits that "[t]he evacuation of Mears' offices, equipment, and personnel was necessary and integral to completing the removal of the contaminated soil from the property in accordance with applicable government safety regulations." Zurich's Motion at 5, ¶ 12. To avoid coverage, however, Zurich argues that the relocation expenses should be considered "arising out of" but not "necessarily incurred in" the cleanup process. In support of its semantic hairsplitting, Zurich relies on the nearly 200 year-old case of M'Bride v. Marine Insurance Company, 7 Johns. 431 (N.Y. Sup. Ct. 1811). M'Bride is a case concerning the construction and effect of a "sue and labor" clause when a ship has been detained by an embargo. The case bears no factual resemblance to this case and has not even been cited by any court since 1891. M'Bride certainly has never served as the basis for denying coverage to an insured for environmental cleanup costs. Moreover, even if, as Zurich contends, M'Bride stands for the premise that discretionary business expenses are not "necessary expenses" under an insurance policy, the expenses Mears incurred in this case were not discretionary. To the contrary, as Zurich admits, they were integral to the cleanup process because the cleanup could not have occurred otherwise. Indeed, the very purpose of the Policy – to provide coverage for cleanup costs incurred in the removal and remediation of contaminated soil – would have been frustrated if Mears' personnel had remained in the M-4 Building, which was deemed uninhabitable and dangerous during the remediation. Thus, removing personnel from the M-4 Building was not a

discretionary business decision made for Mears' convenience as Zurich suggests. Accordingly, M'Bride has no application to this case and does not support Zurich's contention that Mears' relocation expenses are too attenuated to be covered by the Policy.

Zurich also cites to another New York case, Frost v. Whiting National Ins. Co., 141 A.D.2d 400, 529 N.Y.S. 2d 490 (App. Div. 1998), claiming the "case deals specifically" with the coverage issue presently before the Court. In Frost, however, the appellate court summarily upheld the lower court's analysis "of the relevant parts of the insurance policy" without any discussion whatsoever of what the policy actually said. Id. at 401. Inasmuch as we are left to wonder how the fire insurance policy in Frost defined what costs were covered or specifically excluded from coverage, the case obviously is limited to its particular and unknown facts and cannot guide the Court in its resolution of this matter.

As noted in Mears' Motion for Summary Judgment, the facts of this case are very similar to the case of Three Palms Pointe v. State Farm Fire & Cas. Co., 250 F. Supp. 2d 1357 (M.D. Fla. 2003), aff'd, 362 F.3d 1317 (11th Cir. 2004). Admittedly, Three Palms arose in a different procedural context wherein an appraiser determined the amount of coverage which was not disturbed by the district court. Importantly, however, the district court independently determined through a declaratory judgment action the scope of coverage under the policy language. The policy language at issue in Three Palms required the insurer to repair damaged property but failed to define what costs were to be included in the definition of repair costs. Id. at 1359-60. Because the repairs could not be performed safely without the relocation of Three Palms' residents, the cost to remove and relocate the residents was included in the repair costs covered by the policy. Id. Significantly, the Three Palms court rejected the same argument raised by Zurich in this case – namely, that relocation expenses are too collateral to be covered by the

Policy – because the relocation expenses were directly caused and made necessary by the repairs. Id. at 1364. According to the court, "[b]ecause the method of repairing the units, not the collapse itself, made the units uninhabitable," the relocation expenses were repair costs covered by the policy. Id. at 1365.

Like the policy at issue in Three Palms, which did not delineate what types of costs were recoverable as "repair costs" or explicitly exclude coverage for relocation expenses, the Policy in this case does not delineate what types of costs are included in the definition of "cleanup costs" or explicitly exclude coverage for relocation expenses. Further, similar to the dangerous conditions which required the evacuation and relocation of the residents in Three Palms, the process of removing and remediating contaminated soil in this case required the evacuation and relocation of Mears' employees from the M-4 Building. Because the cleanup of contaminated soil could not be performed safely, or legally, without the relocation of Mears' personnel, the cost to evacuate and temporarily relocate the personnel is included in the cleanup costs covered by the Policy.

Zurich emphasizes that the Three Palms case is not controlling authority because it was decided under Florida law and claims the case is mere dicta. New York and Florida, however, apply the same well-established principles of insurance contract interpretation. Additionally, Zurich cannot point to any authority supporting its proposed narrow definition of cleanup costs. Instead, Zurich relies on an antiquated case which bears no similarity to this case and a generic decision with no precedential value. Zurich cannot escape the simple fact that it could have included a more specific definition of cleanup costs in the Policy and enumerated the types of costs contemplated within coverage, but failed to do so. Thus, all expenses that may, by any reasonable construction of the term "cleanup costs," be included within the coverage afforded by

the Policy -- including relocation expenses made necessary by the cleanup process -- should be given protection under the Policy. See York v. Sterling Ins. Co., 114 A.D.2d 665, 666 (N.Y. App. Div. 1985), aff'd, 492 N.E.2d 770 (1986) (Insurance policies must be construed liberally in favor of the policyholder in recognition of the underlying objective to provide coverage, not exclude it.). This Court should render judgment in favor of Mears accordingly.

**II.  If The Term "Cleanup Costs" Is Susceptible To Differing Interpretations, The Court Must Construe The Term In Favor Of Mears As The Policyholder.**

Zurich, not Mears, has the burden of establishing that its proposed interpretation of the policy's terms is the **only** construction that can fairly be placed on the policy language. Hartol Prods. Corp. v. Prudential Ins. Co., 290 N.Y. 44, 49, 47 N.E.2d 687 (N.Y. Ct. App. 1943). Knowing this, Zurich devotes much of its Motion trying to create a distinction between the definition of "cleanup costs" as that term is defined in third-party liability policies versus first-party liability policies like the one at issue in this case. Referencing various environmental statutes, Zurich offers a convoluted explanation in hopes of establishing that the Policy it sold to Mears is written to provide first party coverage only for "on-site cleanup expenses." Zurich's Motion at 15. The problem with Zurich's theory is that the language of the Policy does not limit coverage to "on-site" cleanup costs. Rather, the Policy provides coverage for "any" cleanup costs necessarily incurred in the "investigation, removal, remediation, neutralization or immobilization of contaminated soil . . . ." Zurich's Motion at 3 (Policy II (F)(1.)).

Zurich's narrow interpretation of cleanup costs is unreasonable because it is not based on the language of the Policy, and it is too late for Zurich to apply a more narrow definition of cleanup costs after the fact to deny coverage. Further, Zurich's contention that Mears could have shut down the heart and brains of its business operations and gone out of business while the cleanup was ongoing does not reflect the viewpoint and expectations of a reasonable

businessman, in whose shoes the Court must stand when deciding this issue. Ace Wire & Cable Co., Inc. v. Aetna Cas. & Sur. Co., 457 N.E.2d 761, 764 (N.Y. Ct. App. 1983), aff'd, 60 N.Y.2d 390 (N.Y. 1983) (the terms of an insurance policy must correspond to "the reasonable expectation and purpose of the ordinary businessman.").

Of course, if, as Zurich seems to suggest, the definition of cleanup costs is susceptible to different reasonable interpretations, this ambiguity must be resolved against Zurich as the drafter of the policy and consistent with Mears' reasonable expectation of coverage. Guardian Life Ins. Co. of Am., Inc. v. Schaefer, 519 N.E.2d 288, 289 (N.Y. Ct. App. 1987). Consequently, to the extent the Court finds either (1) that Zurich's interpretation of cleanup costs is unreasonable or (2) that the term "cleanup costs" is susceptible to more than one reasonable interpretation, the Court must interpret the Policy in favor of Mears to provide coverage. See Janneck v. Metropolitan Life Ins. Co., 162 N.Y. 574, 577-78, 57 N.E. 182 (N.Y. Ct. App. 1900), aff'd, 162 N.Y. 574, 57 N.E. 182 (N.Y. 1900) ("[I]nsurance contracts, above all others, should be clear and explicit in their terms. They should not be couched in language as to the construction of which lawyers and courts may honestly differ. In a word, they should be so plain and unambiguous that men of average intelligence who invest in these contracts may know and understand their meaning and import.").

## III. The Policy's Exclusion "L" Is Inapplicable And Does Not Deprive Mears Of Coverage.

In its Motion, Zurich also relies on Policy Exclusion L to deny coverage. Exclusion L states that there is no coverage for "cleanup costs" based upon or arising out of "any costs for the reconstruction, repair, removal, maintenance, replacement, upgrading, or rebuilding of any 'scheduled storage tank system,' personal property, fixtures, buildings or any other improvements and any site enhancement or routine maintenance on, within, or under the

'scheduled location(s)'. . . ." Zurich's Motion at 3-4 (Policy, IV(L)). According to Zurich, Exclusion L would have precluded coverage for cleanup costs arising from the reconstruction of the M-4 Building if the building had been demolished during the cleanup process; therefore, Exclusion L necessarily would preclude coverage for expenses incurred to evacuate the building and temporarily relocate Mears' personnel during the cleanup process. Zurich's Motion at 17. Assuming, without conceding, that Zurich is correct that Exclusion L specifically precludes coverage for repairs and reconstruction to the M-4 Building, Zurich cannot argue for any extension of Exclusion L to cover the facts of this case.

Here, Mears is not asking Zurich to pay for cleanup costs arising out of repairing or reconstructing any storage tank, personal property, fixture, or building. Nor is Mears asking Zurich to pay for cleanup costs arising out of any improvement, site enhancement, or routine maintenance on, within, or under the M-4 Building. Rather, Mears is asking Zurich to pay for cleanup costs arising out of the removal and remediation of contaminated soil from Mears' property which is covered by the Policy. That Zurich now believes it should have drafted Exclusion L more broadly is of no consequence because this Court must strictly construe Exclusion L against Zurich in favor of coverage. At the very least, Exclusion L is ambiguous because it does not specifically refer to relocation expenses which could have easily been listed if Zurich intended for such expenses to be excluded from coverage. Consequently, this Court must construe Exclusion L strictly and narrowly against Zurich and conclude that Mears is entitled to coverage. Belt Painting Corp. v. TIG Ins. Co., 100 N.Y.2d 377, 383 (N.Y. 2003) ("[P]olicy exclusions are given strict and narrow construction, with any ambiguity resolved against the insurer.").

**Conclusion**

This Court should deny Zurich's Motion for Summary Judgment, grant Mears' Motion for Summary Judgment, and render judgment in favor of Mears in the amount of $153,501.79, plus additional attorneys' fees and costs.

Respectfully submitted this 26th day of May, 2009.

> BAKER & HOSTETLER LLP
> SunTrust Center, Suite 2300
> 200 South Orange Avenue
> Post Office Box 112
> Orlando, FL 32802-0112
> Telephone: (407) 649-4000
> Facsimile: (407) 841-0168
>
> **ATTORNEYS FOR PLAINTIFF
> MEARS TRANSPORTATION GROUP**
>
> By: s/Marilyn G. Moran
>     Marilyn G. Moran
>     E-mail: mmoran@bakerlaw.com
>     Florida Bar No. 0163813
>     Scott E. Damon
>     Florida Bar No. 031909
>     E-mail: sdamon@bakerlaw.com

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 26th day of May, 2009, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send notice of electronic filing to the following: Louis Schulman, Esquire and R. Steven Rawls, Esquire, Butler Pappas Weihmuller Katz Craig LLP, counsel for the Defendant.

s/Marilyn G. Moran<br>
Marilyn G. Moran

502422412.1